**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JUAN ZUNIGA** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MORRIS MATERIAL HANDLING,** | ) | |
| **INC., and MUMFORD PROPERTIES,** | ) | |
| | ) | |
| **Defendants.** | ) | **Case No. 10-C-696** |
| | ) | |
| | ) | **District Judge John W. Darrah** |
| **MORRIS MATERIAL HANDLING,** | ) | |
| **INC., and MUMFORD PROPERTIES,** | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| **Third Party Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INNOVATIVE STONE** | ) | |
| **DISTRIBUTION, L.L.C.,** | ) | |
| | ) | |
| **Third Party Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Geraldine Soat Brown, United States Magistrate Judge

Before the court is defendant Morris Material Handling, Inc.'s ("Morris") motion to compel

plaintiff Juan Zuniga to answer certain questions posed during his deposition or in the alternative,

to bar Zuniga's lost earnings and lost earnings capacity damages claims. (Def.'s Am. Mot. Compel.)

1

[Dkt 49.]  Zuniga has filed a brief in opposition to the motion (Pl.'s Resp.) [dkt 50], and Morris has filed its reply (Def.'s Reply) [dkt 56].  For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

Zuniga brings this action against Morris and Mumford Properties ("Mumford") for injuries and losses he allegedly sustained when the hoist assembly of an overhead crane fell and struck him while he was working for Innovative Stone Design ("ISD") in a stone fabrication warehouse. (Notice of Rem., Ex. A., Compl., Cnt. 1 ¶¶ 2, 7.)  [Dkt 1.]  Zuniga alleges that Mumford leased the warehouse to ISD and provided the crane involved, and that Morris had contracted to maintain the crane.  (*Id.*, Cnt. 1 ¶¶ 4, 5, Cnt. 2 ¶¶ 3, 4.)  In addition to other damages like medical expenses and pain and suffering, Zuniga seeks to recover loss of earnings and loss of future earning capacity as a result of the injuries he sustained from the incident.  (*Id.*, Cnt. 1 ¶ 10, Cnt. 2 ¶ 10.)  Morris and Mumford have answered Zuniga's complaint and filed third-party complaints against ISD.  [Dkt 5, 22, 32, 33.]

Zuniga's deposition was conducted on November 15, 2010, with the participation of counsel for each of the parties.  (Def.'s Am. Mot. Compel., Ex. C, Dep. of Juan Zuniga.)  Zuniga testified that he had attended high school in Mexico City, Mexico, and that he had moved to the United States in 1999, where he has resided continuously ever since.  (*Id.* at 9-10.)  Morris's counsel questioned Zuniga about his immigration status, but Zuniga's counsel objected on the basis of relevance and instructed him not to answer.  (*Id.* at 10-11.)  Although they disagreed about the propriety of the inquiry, counsel for Morris and Zuniga agreed that Zuniga would not answer the question but that

they would reconvene the deposition if Zuniga's objection was subsequently overruled. (*Id.* at 10-11.)

Later in the deposition, Mumford's counsel asked Zuniga whether he had a social security card, and again his counsel objected on the basis of relevance and instructed Zuniga not to answer. (*Id.* at 94-95.) As with the earlier open question, counsel for Mumford and counsel for Zuniga agreed that continuing the deposition would not waive any dispute among them regarding that issue. (*Id.*) Zuniga was later asked by Morris's counsel whether he had provided a social security number to ISD when he had applied for his job and whether he had provided the same social security number when he had applied for previous jobs. (*Id.* at 103.) Zuniga's counsel objected to those questions on the grounds of relevancy as well as Zuniga's Fifth Amendment privilege against self-incrimination. (*Id.*)[1] Here, too, counsel for the parties agreed to disagree about the objections and to seek the court's assistance in resolving their dispute. (*Id.* 103-04.)

The attorneys for all parties are commended for their collegiality in attempting to work together to accomplish what they could. This motion followed to obtain a ruling on the dispute.

By its motion, Morris seeks to compel Zuniga to answer those unanswered deposition questions and any related follow-up questions and to pay his "pro rata share of the cost incurred" by Morris in bringing the motion. (Def.'s Am. Mot. Compel at 11.) Specifically, Morris seeks to discover: (1) Zuniga's work status in the United States during the time period for which he claims past and future wage losses; (2) identification of plaintiff's social security number "and how he

---

[1] At this latter part of the deposition, Zuniga's counsel clarified that his earlier directions to Zuniga not to answer were based on the Fifth Amendment privilege against self-incrimination as well as relevance. A relevance objection is not a proper basis for an instruction not to testify. Fed. R. Civ. P. 30(c)(2). Morris does not, however, challenge the timeliness of Zuniga's Fifth Amendment assertion as to any of the unanswered deposition questions.

obtained his social security number"; (3) Zuniga's resident status in the United States since he entered the country; and (4) verification of Zuniga's information as to wages and social security as reported to his employer. (*Id.* at 7-8.) In the alternative, Morris seeks an order barring Zuniga's wage loss claim "as a sanction for asserting his Fifth Amendment privilege and refusing to answer said questions . . . ." (*Id.* at 11.)

## DISCUSSION

### I. Zuniga's immigration status is discoverable.

A party to litigation may generally obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* In this case, Zuniga asserts claims for personal injuries and other losses that he says arose from being injured by a crane while working in stone fabrication. (Compl., Cnt. 1 ¶¶ 9-10, Cnt. 2 ¶¶ 9-10.) He seeks to recover damages under an Illinois common law tort theory, including lost earnings and lost earnings capacity as a result of the incident. (*Id.*, Cnt. 1 ¶10, Cnt. 2 ¶ 10.)

A claim for lost earnings seeks the amount of money that would reasonably and fairly compensate the plaintiff for the loss of earnings he proves to have resulted from the defendants' wrongdoing, taking into consideration all relevant factors. *See* Ill. Pattern Jury Instr. Civ. 30.01, 30.07 (2009 ed.). The loss of future earnings capacity is a separate element of damages and compensates the plaintiff for the future impairment of plaintiff's earning capacity. *LaFever v. Kemlite Co.*, 706 N.E.2d 441, 455 (Ill. 1998). Impairment of earning capacity is calculated by

deducting the amount that the plaintiff is capable of earning after his injury from the amount he was capable of earning prior to his injury, and awarding the plaintiff the difference. *Id.*

Morris argues that Zuniga's immigration status is discoverable because it may limit or bar his lost wages claims. In support of its motion, Morris relies on the rationale of two cases brought under the National Labor Relations Act, *Del Rey Tortilleria, Inc. v. NLRB*, 976 F.2d 1115 (7th Cir. 1992), and *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), and their progeny. In *Del Ray Tortilleria*, the Seventh Circuit ruled unenforceable a National Labor Relations Board order of backpay (wages that would have been earned but for the employer's actions) to undocumented workers. Finding dispositive an earlier Supreme Court decision, *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984), the Seventh Circuit held that in determining backpay, undocumented workers "must be deemed unavailable for work . . . during any period when they were not lawfully entitled to be present and employed in the United States." *Del Ray Tortilleria*, 976 F.2d at 1118-19 (internal quotations and emphasis omitted). The court observed that passage of the Immigration Reform and Control Act of 1986 ("IRCA") seemed to reinforce the rule of unavailability of backpay to undocumented workers. *Id.* at 1122.

Subsequently, in *Hoffman Plastic Compounds*, 535 U.S. at 151-52, the Supreme Court held that the NLRB could not award backpay to an undocumented worker without contravening the federal immigration policy set forth in the IRCA.[2] According to the Court, the IRCA had "forcefully made combating the employment of illegal aliens central to the policy of immigration law." *Id.* at 147 (internal quotations omitted). Because it would be impossible under the IRCA for an

---

[2] As with *Del Ray Tortilleria*, the "backpay" at issue in *Hoffman Plastic Compounds* was pay for the period of time after the employee had been wrongfully terminated. *See Hoffman Plastic Compound*s, 535 U.S. at 140.

undocumented person to obtain employment in the United States without some party directly contravening the explicit congressional policies in the IRCA, an award of backpay (premised as it is on the expectation of a continued employment relationship), would essentially condone and encourage future violations.  Such an award is, therefore, prohibited by the statute.  *Id.* at 147-50.

Morris argues that Zuniga's claims for lost earnings and lost earning capacity are akin to the remedy at issue in *Hoffman Plastic Compounds* and *Del Ray Tortilleria* in that they represent wages for work not performed.  (*See* Def.'s Am. Mot. Compel at 3-6.)[3]  Morris asserts that if Zuniga's immigration status is illegal, those elements of his damages could be defeated as contrary to federal immigration policy, or at least be subject to a different analysis.  (*Id*. at 3.)

Zuniga argues in opposition that unlike the federal statute at issue in those cases, Illinois law allows for lost wages claims regardless of citizenship or immigration status.  He cites *Economy Packing Co. v. Ill. Workers' Compen. Commn*., 901 N.E.2d 915, 923 (Ill. App. 1st Dist. 2009), in which the Illinois Appellate Court held that a worker who had stipulated to her illegal status was not prohibited from obtaining workers' compensation benefits.  The court distinguished the award of backpay at issue in *Hoffman Plastic Compounds* from an award of workers' compensation, finding that undocumented workers are not excluded from the definition of employees covered under the Illinois statute, and that the statute is not preempted by the IRCA.  *Id.* at 922-923.  The claimant's claim for workers' compensation benefits was unrelated to her violation of the IRCA.  *Id*. at 922.

Although the IRCA prevents the claimant from legally working in the United States,

---

[3] Zuniga's claim for lost wages – pay he theoretically would have earned for work he would have done but for the injury – is thus different from a claim under the Fair Labor Standards Act ("FLSA") for unpaid wages due for work previously performed.  Such FLSA claims are not contrary to the policies of the IRCA, and therefore, a plaintiff's immigration status is irrelevant to such claims.  *See Villareal v. El Chili, Inc*., 266  F.R.D. 207 (N.D. Ill. 2010).

she would still be able to work elsewhere had she not sustained a work-related injury. As a consequence, the award of [workers' compensation] benefits to the claimant is separate and distinct from any continuing violation of the IRCA and, therefore, does not conflict with federal immigration policy.

*Id.* at 923.

Zuniga's argument that *Economy Packing* makes immigration status irrelevant to a claim of lost wages under Illinois law reads too much into that decision. *Economy Packing* involved a claim for workers' compensation, which carries particular public policy implications. Workers' compensation is a remedy created by statute, imposing liability on employers for workplace injuries. *Economy Packing*, 901 N.E.2d at 920. There are policy reasons for imposing such liability regardless of the immigration status of the injured worker.

[E]xcluding undocumented aliens from receiving certain workers' compensation benefits would relieve employers from providing benefits to such employees, thereby contravening the purpose of the IRCA by creating a financial incentive for employers to hire undocumented workers.

*Id.* at 923. Courts in other jurisdictions have almost uniformly held that undocumented workers are not precluded from workers' compensation benefits. *Id.*

The policy considerations applicable to workers' compensation are not similarly implicated in a case arising in common law tort. As a result, a number of courts have held that an undocumented worker's employment status limits the worker's claim for lost wages under common law. *See, e.g., Martinez v. Freeman*, No. 06 C 50199, 2008 U.S. Dist. LEXIS 112290 at *7 (N.D. Ill. Feb. 22, 2008) (barring undocumented plaintiff's claim for loss of future U.S. earnings but allowing claim for lawful future earnings, like earnings in his native Mexico); *Veliz v. Rental Serv. Corp. USA, Inc.*, 313 F. Supp. 2d 1317, 1336-37 (M.D. Fla. 2003) (barring undocumented plaintiff's claim for lost future U.S. wages); *Hernandez-Cortez v. Hernandez*, No. A 01-1241-JTM, 2003 WL

22519678 at * 7 (D. Kan. Nov. 4, 2003.) (holding that plaintiff's illegal immigration status precludes recovery for lost income based on projected U.S. earnings); *Rosa v. Partners in Progress, Inc.*, 868 A.2d 994, 1002 (N.H. 2005) (finding worker's immigration status relevant to issue of lost wages). On the other hand, at least one court has held that a worker's undocumented status does not affect recovery under common law. *Tyson Foods, Inc. v. Guzman*, 116 S.W.3d 233, 244 (Tex. App. 2003). The other decisions Zuniga cites were decided before the IRCA or before the *Hoffman* decision. (*See* Pl.'s Resp. at 5-6.)

In the absence of any Illinois authority on point, both Zuniga and Morris highlight *Diaz v. Chicago Transit Authority*, 528 N.E.2d 398, 404-05 (Ill. App. 1st Dist.1988), a personal injury action brought by a bus passenger. The trial judge in *Diaz* initially ruled that the plaintiff's immigration status was irrelevant but changed his mind during the course of the trial. That case provides no guidance here, however, both because the issue was deemed waived on appeal and because it was decided before the Supreme Court's decision in *Hoffman*.

It appears that there is no definitive authority under Illinois law about whether an undocumented worker's immigration status precludes some or all of the worker's lost earnings or future earnings capacity claims in a common law tort case. For purposes of determining the scope of discovery, however, it is enough to say that Zuniga's ability to be employed legally in the United States *may* affect his claim for lost wages. If his claim is based on the premise that Zuniga would continue to be employed in the United States but for the injury, his ability to be employed legally in this country is arguably relevant to that claim and to his future earnings capacity claim. Ultimately, the District Judge may decide at the time of trial that evidence of Zuniga's immigration status is not relevant to Zuniga's claims as he then intends to present them, or is unduly prejudicial, or should not

be admitted for some other reason. The question now is only whether inquiry into Zuniga's immigration status could lead to admissible evidence bearing on any claim or defense. The answer to that question is yes.

In deciding whether the discovery should be ordered, the court has also considered whether allowing discovery of Zuniga's immigration status would have an *in terrorem* effect on potential plaintiffs. That is a concern in the context of workers' compensation and other remedies created by statutes to protect workers. *See, e.g., Villareal*, 266 F.R.D. at 214. That concern, however, is significantly less in the context of common law litigation. There are meaningful differences between a worker's statutory claim to a minimum wage or workers' compensation benefits against his employer, and a common law tort action against suppliers and maintainers of equipment with whom the plaintiff had no prior relationship, like Morris and Mumford here. There is no reason to believe that suppliers and maintainers of equipment will be less interested in avoiding negligence liability because of the possibility that a particular plaintiff's damages might be limited by his immigration status. Moreover, a plaintiff in a common law personal injury action has the ability to shape the claims he presents. If lost earnings or earning capacity claims implicate issues about which a plaintiff declines to speak, he may decide not to pursue those particular damages without foregoing his entire negligence claim. If he does pursue those types of damages, however, he must comply with the full scope of discovery that is relevant to them.

As a fallback position, Zuniga argues that he has provided enough information, that he has "complied with his burden of providing all relevant financial information" by providing W-2 forms, federal tax returns and a valid taxpayer identification number. (Pl.'s Resp. at 8.). That information relating to past events is not sufficient. The defendants are entitled to discovery about whether

Zuniga may be lawfully employed in the United States during any time for which he seeks damages, including damages for lost wages allegedly incurred to date and future earnings capacity. Discovery on that issue will aid in the determination of how Zuniga's immigration status affects his lost earnings and earnings capacity claims, if at all.

In summary, Morris's motion is granted to allow discovery of Zuniga's immigration status during the period for which he seeks to recover damages for loss of earnings and lost earnings capacity. But not all of the subtopics Morris has identified are relevant. Zuniga's immigration status prior to the time period for which he claims damages for lost earnings or earnings capacity is not relevant. Inquiry into "how" Zuniga obtained his social security and taxpayer identification numbers is limited to authentication of those numbers.

## II.     The deposition must be reopened to allow Zuniga to invoke his Fifth Amendment privilege, if he chooses to do so.

The determination that Zuniga's immigration status is discoverable does not fully resolve the current motion. Zuniga also argues that he properly asserted his Fifth Amendment privilege because answering questions regarding his social security number, residency or legal status "could arguably create a chain of evidence used to prosecute him for a crime." (Pl.'s Resp. at 9.) Morris points out that a plaintiff who initiates a civil action but refuses to present evidence generally cannot then prevail on the merits with regard to the issues on which he bears the burden of proof. *See Hiley v. United States*, 807 F.2d 623, 628 (citing *Kisting v. Westchester Fire Ins. Co.*, 290 F. Supp. 141, 149 (W.D. Wis. 1968), *aff'd*, 416 F.2d 967 (7th Cir. 1969)). Morris asks that, since Zuniga refused to answer the questions, his claims for lost earnings and loss of earnings capacity be barred. (Def.'s

Am. Mot. Compel at 11.)

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . . U.S. Const. Am. V. The "Fifth Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976) (internal quotations omitted).

The privilege against compulsory self-incrimination must be accorded liberal construction in favor of the right it was intended to secure. *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The privilege extends to answers that would themselves implicate the declarant in a crime as well as those that would furnish a link in the chain of evidence needed to prosecute the declarant for a crime. *Id.* The privilege may properly be invoked in a civil proceeding such as this one. *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1154 (7th Cir. 1981). In civil litigation, however, an adverse inference may be drawn from the assertion of the Fifth Amendment privilege. *Baxter*, 425 U.S. at 318; *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 663 (7th Cir. 2002).

It is incorrect to assume that a person has *carte blanche* by virtue of the Fifth Amendment's self-incrimination clause to refuse to answer all questions. *In re High Fructose Corn Syrup,* 295 F.3d at 663. "To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have *some* tendency to subject the person being asked the question to criminal liability." *Id*. at 663-64 (emphasis in original). A

witness must make a determination with regard to each specific question posed to him whether the question creates some tendency to subject him to criminal liability. *Id.* at 663.

Here, Zuniga's counsel initially objected to questions about Zuniga's immigration status on the basis of relevance. (Zuniga Dep. at 10, 95.) It was only later in the deposition that counsel announced that Zuniga was also invoking the Fifth Amendment. (*Id.* at 102-04.) On this record, it is not clear that Zuniga made a considered decision to invoke the privilege (with the possible consequence of an adverse inference in this civil case) as to those questions. Also, the lawyers' agreement to put the subject aside during the deposition prevented a question-by-question invocation of the privilege, which is necessary to determine the applicability of the privilege.

Zuniga has a right to invoke his Fifth Amendment privilege, but this record has not yet been developed sufficiently to evaluate whether his invocation is proper as to any particular questions. It is premature to make any judgment about what effect his invocation of the privilege might have on his claims for damages.

In summary, Morris and Mumford may reconvene Zuniga's deposition in order to ask questions about the following: (1) Zuniga's eligibility to work in the United States during the time period for which he claims past and future wage losses; (2) the identification and authentication of Zuniga's social security number and/or taxpayer identification number; and (3) verification of Zuniga's information about wages and social security as reported to ISD. As to each specific question, Zuniga may choose to answer or, if he has a well-grounded basis for doing so, he may assert his Fifth Amendment privilege and decline to answer. This ruling does decide any other objection (such as an objection to the form of the question) that might be raised as to a specific question. The ultimate admissibility of any answers Zuniga may give and the consequences of

declining to answer any specific question are issues for the trial judge.

## CONCLUSION

For all of the foregoing reasons, defendant's Amended Motion to Compel Against Plaintiff as to Certain Questions Posed During Plaintiff's Discovery Deposition [dkt 49] is granted in part and denied in part.  Each party shall bear its own costs and fees on the motion.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

February 14, 2011